1   Scott P. Shaw, State Bar No. 223592
    sshaw@calljensen.com
2   Aaron L. Renfro, State Bar No. 255086
    arenfro@calljensen.com
3   CALL & JENSEN
    A Professional Corporation
4   610 Newport Center Drive, Suite 700
    Newport Beach, CA 92660
5   Tel:   (949) 717-3000
    Fax:   (949) 717-3100
6

7   Attorneys for Defendant Morex Enterprises, Inc.

8

9                   UNITED STATES DISTRICT COURT

10                  CENTRAL DISTRICT OF CALIFORNIA

11

12   STAR FABRICS, INC., a California          Case No. CV 10-07987 DDP (AGRx)
     Corporation,
13                                             **DEFENDANTS' MEMORANDUM OF
                     Plaintiff,                POINTS AND AUTHORITIES IN
14                                             SUPPORT OF MOTION FOR
                     vs.                       SUMMARY ADJUDICATION**
15

16   TARGET CORPORATION, a Minnesota
     Corporation; KANDY KISS OF
17   CALIFORNIA, INC., a California            Date:  September 12, 2011
     Corporation; MOREX ENTERPRISES,          Time:  10:00 a.m.
18   INC., and DOES 1 through 10,              Crtrm: 3

19                   Defendants.

20

21                                             Complaint Filed:  October 22, 2010
                                               Trial Date:       November 8, 2011
22

23

24

25

26

27

28

MOR10-02:838941_4:8-12-11

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY
ADJUDICATION

# TABLE OF CONTENTS

Page

I.      INTRODUCTION. ......................................................................... 1

II.     BRIEF STATEMENT OF THE UNDISPUTED FACTS. ................................... 4

III.    STANDARD FOR SUMMARY JUDGMENT/ADJUDICATION..................... 6

IV.     PLAINTIFF IS NOT ENTITLED TO A DISGOREMENT OF
        PROFITS FROM KANDY KISS OR TARGET AS A DAMAGES
        REMEDY................................................................................... 7

        **A.**   Legal Framework for Damages Under the Copyright Act**.**......................... 7

        B.    Star Fabrics Does Not Claim and Does Not Present Any
              Evidence That Kandy Kiss or Target Profited From the
              *Copyright* Infringement. ............................................... 11

        C.    Plaintiff Has Absolutely No Evidence of Contributory or
              Vicarious Copyright Infringement by Kandy Kiss or Target. .................. 12

        D.    Plaintiff Cannot Establish a Causal Link Between the
              Alleged Infringement by Kandy Kiss and Target and Any
              Alleged Profits Unjustly Earned *Due to* the Alleged
              Infringement. ................................................................ 13

V.      CONCLUSION........................................................................ 16

CALL & JENSEN
A PROFESSIONAL CORPORATION

1

## TABLE OF AUTHORITIES

2

Page

3

## <u>FEDERAL CASES</u>

4

*American International Group, Inc. v. American International Bank*, 926 F.2d
5    829 (9th Cir. 1991)....................................................................................... 7

6  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................. 6, 7

7  *Bandag Inc. v. Al Bolser's Tire Stores*, 750 F.2d 903 (Fed. Cir. 1984) ......................... 9

8  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)................................................. 6

9
   *Champion Spark Plug Co. v. Sanders*, 331 U.S. 125 (1947) ........................... 1
10

11  *Ellison v. Robertson*, 357 F.3d 1072 (9th Cir. 2004) ................................... 13

12  *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259 (9th Cir. 1996)................... 12, 13

13  *Gucci America, Inc. v. Daffy's Inc.*, 354 F.3d 228 (3rd Cir. 2003) ............................. 14

14  *Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992)........................ 7

15  *Hately v. SEC*, 8 .3d 653 (9th Cir. 1993)........................................................ 8

16
   *Mackie v. Rieser*, 296 F.3d 909 (9th Cir. 2002) ..................................... 10, 14
17

18  *Meade v. Cedarapids, Inc.*, 164 F.3d 1218 (9th Cir. 1999) .......................... 7

19  *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005) .............. 12

20  *Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700 (9th Cir. 2004) .... 9, 10, 14

21  *Summers v. Teichert & Son, Inc.*, 127 F.3d 1150 (9th Cir. 1997)................................. 7

22  *Taylor v. List*, 880 F.2d 1040 (9th Cir. 1989) ............................................... 6

23  *Three Boys Music Corp. v. Bolton*, 212 F.3d 477 (9th Cir. 2000) ............................. 10

24
25  *Walker v. Forbes, Inc.*, 28 F.3d 409 (4th Cir. 1994) ..................................... 8

26

27

28

CALL & JENSEN
A PROFESSIONAL CORPORATION

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY
ADJUDICATION

# TABLE OF AUTHORITIES (con't)

Page

## **FEDERAL STATUTES**

Copyright Act § 106(3) ..................................................................................... 2

17 U.S.C. § 109 ............................................................................................... 11

17 U.S.C. § 504(b) ........................................................................................ 1, 7

17 U.S.C. § 504(c)(2) ........................................................................................ 9

Fed. R. Civ. P. 56(c) ........................................................................................ 6

Fed. R. Civ. P. 56(e) ........................................................................................ 6

## **OTHER AUTHORITY**

H.R.Rep. No. 1476, 94th Cong., 2d Sess. 161, *reprinted in* 1976 U.S. Code
   Cong. & Admin. News 5777 .................................................................. 8

**CALL & JENSEN**
A PROFESSIONAL CORPORATION

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION.

A plaintiff in a copyright infringement action can sue for infringement and obtain an injunction.  A plaintiff can also seek statutory damages, or actual damages and any "profits of the infringer that are *attributable to the infringement* and are not taken into account in computing actual damages."  17 U.S.C. § 504(b).  In other words, a plaintiff is not only allowed to recover its actual loss but also the ill-gotten gains received by a defendant who *profited due to the infringing conduct*.  This makes sense.  Otherwise, it would be cheaper to infringe.  But disgorgement of profits is not automatic upon infringement; rather, disgorgement is *only* an available remedy if the plaintiff can prove that the defendant realized additional profits *because of* the infringement.[1]  The primary purpose behind allowing disgorgement of profits as a remedy is to prevent unjust enrichment.

This case involves allegations of copyright infringement pertaining to a textile design that is printed on fabric.  In the textile industry, fabric companies often create or purchase designs and apply for copyright registration of the designs.  They offer these designs for sale to their customers who may choose to buy a certain amount of yardage bearing a particular design.  The price of the fabric is based on various factors including fabric type, quantity, customer relationships, shipping, and destination charges – but, specifically not the copyrighted design itself.  In other words, the monetary value of the copyrighted design, if any, is not a factor when it is printed on fabric.  When the fabric is sold to a garment manufacturer, the fabric company no longer exercises any control over that fabric or any further distribution.  The fabric company does not earn a license fee or receive a royalty from any further distribution.  The manufacturer or vendor will

---

[1]  The same considerations are present in trademark cases where plaintiffs seek to disgorge profits of the defendant.  Indeed, the Supreme Court has held that disgorgement of profits is not allowed merely because there has been an infringement. *See Champion Spark Plug Co. v. Sanders*, 331 U.S. 125, 131 (1947).

CALL & JENSEN
A PROFESSIONAL CORPORATION

1   typically have the fabric cut and sewed into finished garments that are sold to retailers,

2   who in turn sell the finished garments to their customers.

3          In this case, Star Fabrics, Inc. ("Star Fabrics" or "Plaintiff") is suing three

4   defendants:  (1) Morex Enterprises, Inc. (a fabric supplier/distributor); Kandy Kiss of

5   California, Inc. (a manufacturer/vendor of garments); and Target Corporation (a

6   retailer).  Star Fabrics claims that Morex sold fabric to Kandy Kiss bearing a design that

7   Star Fabrics owns, and that Star Fabrics should have made the sale to Kandy Kiss and

8   received profits from the sale.  Star Fabrics' ability to recover its actual damages are not

9   at issue in this motion; neither is Star Fabric's ability to disgorge any ill-gotten gains

10  realized by Morex from the sale of the alleged infringing fabric.  The only issue

11  discussed in this motion is whether Star Fabrics is legally entitled to disgorge profits

12  from the sale/distribution of garments by Kandy Kiss and Target.

13         The first step in the analysis is to define and understand the nature of the direct

14  "infringing conduct."  Obviously, Kandy Kiss and Target did not directly copy the Star

15  Fabrics' fabric pattern; rather, they unknowingly and innocently distributed garments

16  bearing an alleged unauthorized design.  In this context, the "direct infringement" is the

17  violation of Star Fabrics' *right* to control distribution of its copyrighted textile design —

18  which Star Fabrics admits has no monetary value.  The right to control distribution is a

19  right Star Fabrics possesses, and is even a right we can assume Kandy Kiss and Target

20  innocently violated for purposes of this motion.[2]  The question for this motion,

21  however, is what wrongful profits (ill-gotten gains), if any, did Kandy Kiss and Target

22  realize from distributing garments bearing an *unauthorized* pattern?  The answer is

23  none.  Since Plaintiff cannot provide any evidence showing that Kandy Kiss or Target

24  profited as a result of selling a garment with an *unauthorized* pattern, Plaintiff is not

25

26

27  [2] Section 106(3) of the Copyright Act gives the copyright owner the right to distribute
    copies.  Defendants do not concede liability, but direct liability can be assumed for
28  purposes of this motion.

CALL & JENSEN
A PROFESSIONAL CORPORATION

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY
ADJUDICATION

1  entitled to disgorge any profits (*i.e.,* there are no profits *attributable to* their innocent
2  infringement).

3      **Consider a simple hypothetical.**  Plaintiff sells 100,000 yards of fabric and
4  realizes profits of $40,000.  Morex sells the fabric with an infringing design for
5  $100,000 and realizes profits of $60,000.  Plaintiff argues it should have made the sale
6  and is therefore entitled to recover its $40,000 in lost profits.  Plaintiff is correct, and
7  Plaintiff would be made whole by receiving $40,000.  However, the problem Congress
8  recognized is that Morex should not be allowed to keep the $20,000 of profits *due to the*
9  *infringement*.  For this reason, Congress provided the copyright owner with a remedy to
10  disgorge those ill-gotten profits to discourage cases of "efficient infringement."  Based
11  on this logical framework, as discussed further below, Kandy Kiss and Target did not
12  earn any wrongful profits, so there is nothing to disgorge.

13      For purposes of this motion, four dresses sold by Target are relevant to the profit
14  disgorgement analysis.[3]  All of the dresses were purchased from Kandy Kiss.  Star
15  Fabrics claims that it purchased the designs for $550 and owns registered copyrights for
16  the fabric patterns on all four dresses.  However, Star Fabrics only authorized fabric to
17  be printed for two of the dresses and made $80,000 from its sale of fabric to Kandy
18  Kiss.  The other two dresses include fabric from Morex, which Star Fabrics did not
19  authorize.  For this garment – the alleged infringing garment – Star Fabrics is not only
20  seeking to disgorge the profits that Morex made on its sales of fabric to Kandy Kiss, but
21  is also improperly seeking to disgorge **all** the profits earned by Kandy Kiss and Target
22  from the sale of *garments*, which amounts to well over $1 million.

23      Unfortunately for Star Fabrics, it is not entitled to a windfall.  Under the
24  Copyright Act, Star Fabrics is not legally entitled to disgorge any profits from sales of
25  *garments* by Kandy Kiss or Target unless Star Fabrics can present evidence that Kandy

---

[3] There were actually five dresses as part of the program with Target, but one of the
dresses had fabric that was sourced from a third party named Asta.  The other four
dresses included fabric from Morex and Star Fabrics (*i.e.,* two dresses from each fabric
supplier).  (*See* Declaration of Tad Akin, ¶ 7, Ex. 1.)

**CALL & JENSEN**
A PROFESSIONAL CORPORATION

26
27
28

Kiss and Target profited from sale/distribution of garments bearing an *unauthorized* textile pattern.  Unless Kandy Kiss and Target's profits were greater than if the textile pattern was from an authorized source, no profits are *attributable to* or *due to* their direct "infringement," which is merely the innocent distribution of garments.  The Ninth Circuit Model Jury Instructions and case law make clear that it is Plaintiff's burden to prove that a causal link exists between selling/distributing a garment with an *unauthorized* pattern and profits derived *from* that *unauthorized* pattern.  Otherwise, there is nothing to disgorge; and there is no unjust enrichment.  In short, Star Fabrics cannot meet its burden as a matter of law, so summary adjudication is appropriate.[4]

## II.   BRIEF STATEMENT OF THE UNDISPUTED FACTS.

A brief summary of the relevant industry background is necessary to explain the chain of distribution in this case.  In the textile industry, fabric companies such as Morex and Star Fabrics will either create or purchase designs and apply for copyright registration.  (UF No. 1.)  They offer these designs for sale to their customers who are typically garment manufacturers or companies looking to have garments manufactured.  (UF No. 2.)  These customers will select a design and then place an order to buy a certain amount of yardage needed for the garments.  (UF No. 3.)  Fabric companies do not charge for the designs; rather, the price of the fabric yardage is based on various factors, including fabric type, quantity, customer relationships, shipping, and destination charges.  (UF No. 3.)  After the fabric is sold and shipped to the customer, the fabric company no longer exercises any control over any further distribution.  (UF No. 4.)  The fabric company does not earn a license fee or receive a royalty from any further distribution.  (UF No. 5.)  The customer/manufacturer will have the fabric cut and sewed into finished garments that are sold to retailers, who in turn sell the finished garments to their customers.  (UF No. 6.)

---

[4]  Plaintiff still has an election of remedies, including a request for actual damages, statutory damages, and an injunction.

CALL & JENSEN
A PROFESSIONAL CORPORATION

Star Fabrics filed this lawsuit on October 22, 2010, alleging that Defendants infringed upon its design entitled "H59705" and copyrighted as VA 1-409-811. (Compl., ¶ 11.)  In its Complaint, Star Fabrics asserts two separate causes of action: one for direct copyright infringement; and another for claim vicarious and/or contributory infringement.  (Compl., ¶¶ 14-27.)  Star Fabrics is seeking to recover actual damages and disgorgement of Defendants' profits.  (UF No. 7.)

The copyrighted work at issue in this case is a textile pattern, or often referred to simply as a design.  Plaintiff purchased the textile pattern from Tom Cody Design in October 2006 for a fixed fee of $550.  (UF No. 8.)  Tom Cody Design charges a flat fee for all of its designs.  (UF No. 9.)  Shortly after Star Fabrics obtained the design, it began to offer fabric bearing this design for sale to customers.  (UF No. 10.)  Star Fabrics did not charge any more or less for fabric with the design at issue in this case than any other design.  (UF No.11.)  In other words, the price charged for fabric was due to other factors, but specifically not the design.  (UF No. 12.)  Rather, the cost of the design was accounted for as part of Star Fabrics' general overhead.  (UF No. 13.)

Kandy Kiss is one of Star Fabrics' customers, and Target is a customer of Kandy Kiss.  (UF Nos. 14-15.)  As part of a garment program with Target, Kandy Kiss decided to have fabric sourced from Morex and Star Fabrics.  (UF Nos. 16-19.)  All the garments (dresses) are the same silhouette (*i.e.,* the same style and cut), but the fabric patterns are slightly different.  (UF No. 17.)  Star Fabrics charged $1.50 per yard for the yardage of fabric necessary to manufacture the dresses for Kandy Kiss.  (UF No. 18.)  From its sale, Star Fabrics received approximately $80,000 in profits.  (UF No. 18.)  Morex charged $1.65 per yard for the yardage of fabric necessary to manufacture the dresses for Kandy Kiss.  (UF No. 19.)  According to Star Fabrics, the fabric sold by Morex included the alleged infringing textile design at issue in this case.  (UF No. 19.)  Star Fabrics claims that it should have made the sale because it owns the pattern that Morex printed on fabric.  (UF No. 19.)  Star Fabrics claims that it should have received an additional $80,000 in profit from the sale of fabric by Morex.  (UF No. 19.)

CALL & JENSEN
A PROFESSIONAL CORPORATION

1    Star Fabrics is not claiming that it would have received profits from the sales by

2    Kandy Kiss or Target whether or not it had sourced and/or authorized the textile

3    patterns.  (UF No. 20.)  Star Fabrics does not have agreements with retailers or license

4    its designs to retailers.   (UF No. 21.)   Target's suggested retail profit from both

5    garments received from Kandy Kiss was the same, and Target's profit margin on both

6    garments was approximately 55%.  (UF No. 22.)   In other words, there was no

7    difference in the profit margin of garments that had fabric sourced from Morex (the

8    alleged infringing garments) than those garments with fabric sourced from Star Fabrics.

9    (UF No. 22.)    Because Target made the same profit on the sale of dresses bearing the

10   alleged unauthorized pattern as the dresses bearing the authorized pattern, Target's

11   profits cannot be *attributable* to the infringement.

12

13   ## III.    STANDARD FOR SUMMARY JUDGMENT/ADJUDICATION.

14   Summary judgment is proper where "the pleadings, the discovery and disclosure

15   materials on file, and any affidavits show that there is no genuine issue as to any

16   material fact and that the movant is entitled to judgment as a matter of law." Fed. R.

17   Civ. P. 56(c). The moving party has the burden of demonstrating the absence of a

18   genuine issue of fact for trial.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256

19   (1986).   A party opposing a properly made and supported motion for summary

20   judgment may not rest upon mere denials but must "set out specific facts showing a

21   genuine issue for trial."  Fed. R. Civ. P. 56(e); *see also Taylor v. List*, 880 F.2d 1040,

22   1045 (9th Cir. 1989).  ("A summary judgment motion cannot be defeated by relying

23   solely on conclusory allegations unsupported by factual data.")  In particular, when the

24   non-moving party bears the burden of proving an element essential to its case, that

25   party must make a showing sufficient to establish a genuine issue of material fact with

26   respect to the existence of that element or be subject to summary judgment.  *See*

27   *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "An issue of fact is not enough to

28   defeat summary judgment; there must be a genuine issue of material fact, a dispute

CALL & JENSEN
A PROFESSIONAL CORPORATION

1  capable of affecting the outcome of the case." *American International Group, Inc. v.*

2  *American International Bank*, 926 F.2d 829, 833 (9th Cir. 1991) (Kozinski, dissenting).

3          An issue is genuine if evidence is produced that would allow a rational trier of

4  fact to reach a verdict in favor of the non-moving party. *Anderson*, 477 U.S. at 248.

5  "This requires evidence, not speculation." *Meade v. Cedarapids, Inc.*, 164 F.3d 1218,

6  1225 (9th Cir. 1999). The Court must assume the truth of direct evidence set forth by

7  the opposing party. *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 507 (9th Cir.

8  1992). Although the party opposing summary judgment is entitled to the benefit of all

9  reasonable inferences, "inferences cannot be drawn from thin air; they must be based on

10  evidence which, if believed, would be sufficient to support a judgment for the

11  nonmoving party." *American International Group*, 926 F.2d at 836-37. In that regard,

12  "a mere 'scintilla' of evidence will not be sufficient to defeat a properly supported

13  motion for summary judgment; rather, the nonmoving party must introduce some

14  'significant probative evidence tending to support the complaint.'" *Summers v.*

15  *Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997).

16

17  **IV.    PLAINTIFF IS NOT ENTITLED TO A DISGOREMENT OF PROFITS**

18  **FROM KANDY KISS OR TARGET AS A DAMAGES REMEDY.**

19          **A.    Legal Framework for Damages Under the Copyright Act.**

20          Under the Copyright Act, a plaintiff may recover its actual loss as damages as

21  well as an infringer's profits, but only if the profits are *attributable to the infringement*,

22  and so long as there is no double recovery. 17 U.S.C. § 504(b). This rule makes clear

23  that a plaintiff can only disgorge those profits that are *due to* the infringement, *caused*

24  *by* the infringement, or *realized solely because of* the infringement. According to

25  Congress, the Copyright Act was passed in order to reimburse copyright owners for

26  losses, and to disgorge infringers of any *benefit derived from their infringement*.

27  Congress has clearly explained the purpose of Section 504(b):

28

CALL & JENSEN
A PROFESSIONAL CORPORATION

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY ADJUDICATION

In allowing the plaintiff to recover "the actual damages suffered by him or her as a result of the infringement," plus any of the infringer's profits "that are attributable to the infringement and are not taken into account in computing the actual damages," section 504(b) recognizes the different purposes served by awards of damages and profits.  Damages are awards to compensate the copyright owner for losses from the infringement, and *profits are awarded to prevent the infringer from unfairly benefiting from a wrongful act*.

H.R.Rep. No. 1476, 94th Cong., 2d Sess. 161, *reprinted in* 1976 U.S. Code Cong. & Admin. News 5777 (emphasis added).  The reasoning behind the disgorgement of profits remedy is further explained as follows:

The reasoning behind this approach to damages is clear: it makes the infringer realize that it is cheaper to buy than to steal.  A basic tort theory of damages, awarding only the plaintiff's injury, would allow for cases of "efficient infringement," i.e., situations where the profit exceeded the licensing fee, leaving infringers indifferent as to whether they paid up front or paid in court.  By stripping the infringer not only of the licensing fee but also of the profit generated as a result of the use of the infringed item, the law makes clear that there is no gain to be made from taking someone else's intellectual property without their consent.

*Walker v. Forbes, Inc.* 28 F.3d 409, 412 (4th Cir. 1994); *see also Hately v. SEC*, 8 .3d 653 (9th Cir. 1993) (disgorgement of profits is to prevent unjust enrichment).  The purpose of disgorging an infringer's profits is to ensure that they do not "steal" or take something for free that they should have paid for.  It is designed to prevent cases of efficient infringement – not to provide plaintiffs with a windfall or otherwise reward

CALL & JENSEN
A PROFESSIONAL CORPORATION

plaintiffs who sue innocent infringers further down the distribution chain.[5]  *See, e.g., Bandag Inc. v. Al Bolser's Tire Stores*, 750 F.2d 903, 918 (Fed. Cir. 1984) (applying Ninth Circuit law in a trademark case and reasoning that the "[t]he defendant may not retain the fruits, if any, of *unauthorized* trademark use or continue that use; *plaintiff is not, on the other hand, entitled to a windfall*" [emphasis added]).

The Ninth Circuit has fully embraced this reasoning and has required copyright plaintiffs to demonstrate the alleged causal link when seeking to disgorge profits.  *Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700, 711 n.7 (9th Cir. 2004). Specifically, the copyright plaintiff thus bears the initial burden of demonstrating a causal relationship between the "infringement" and those profits attributable to the "infringement."  *See* Ninth Circuit Model Jury Instruction 17.24.  The "Comment" section of the Ninth Circuit Model Jury Instruction provides:

> The Copyright Act "creates a two-step framework for recovery of indirect profits: (1) the copyright claimant must first show a causal nexus between the infringement and the [infringer's] gross revenue; and (2) once the causal nexus is shown, the infringer bears the burden of apportioning the profits that were not the result of infringement."  *Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700, 711, 714 n.10 (9th Cir. 2004) (approving a jury instruction stating: "Indirect profits have a less direct connection or link to the infringement.  Plaintiff seeks indirect profits in this case.  To recover indirect profits, Plaintiff must establish a causal relationship between the infringement and the profits

---

[5] Congress further expressed its intent by allowing an innocent infringer to argue for a reduction in statutory damages from $750 to $200.  17 U.S.C. § 504(c)(2).  It is clear that Congress did not intend innocent infringers on the one hand to be allowed a reduction in statutory damages to $200, and on the other hand be held liable for $1 million dollars in profit disgorgement.

CALL & JENSEN
A PROFESSIONAL CORPORATION

generated indirectly from such infringement." The "fundamental standard" for whether a causal nexus is shown as required for an award of indirect profit is that the plaintiff "'must proffer some evidence . . . [that] the infringement at least partially caused the profits that the infringer generated as a result of the infringement.'" *Polar Bear Productions, Inc.*, 384 F.3d at 711 (quoting *Mackie v. Rieser*, 296 F.3d 909, 911 (9th Cir. 2002) (plaintiff seeking to recover indirect profits must formulate the initial evidence of gross revenue duly apportioned to relate to the infringement).

The Ninth Circuit Model Jury Instruction Comment section further confirms that the plaintiff has the burden to prove revenue "associated with the infringement" and not "infringer's overall gross sales":

A jury instruction on the defendant's profits must adequately convey the burden of proof on attribution of profit. The copyright owner is required to present proof "only of the infringer's gross revenue, and the infringer is required to prove . . . deductible expenses" and "what percentage of the infringer's profits" were not attributable to copying the infringed work. *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 487 (9th Cir. 2000). **However, "gross revenue" for purposes of determining indirect profits means "the gross revenue *associated with the infringement*, as opposed to the infringer's overall gross sales resulting from all streams of revenue."** *Polar Bear Productions, Inc.*, 384 F.3d at 711 n.8 (noting that the Ninth Circuit definition, like that in other circuits, applies a "rule of reason" so that "the causation

CALL & JENSEN
A PROFESSIONAL CORPORATION

1    element…serves as a logical parameter to the range of gross

2    profits a copyright plaintiff may seek").

3        The "infringement" by innocent manufacturers or retailers is limited to the

4    distribution of a _garment_ bearing an unauthorized textile pattern – not the textile pattern

5    itself.  Unless a plaintiff assigned some value to the copyrighted textile pattern itself and

6    could show that a garment manufacturer or retailer unlawfully profited by infringing the

7    _copyright_, a plaintiff is not allowed to generally disgorge profits.  Where, as here, the

8    alleged "infringement" itself is merely the distribution of a garment, there are no profits

9    associated with the infringement.  As the Ninth Circuit has made clear, the burden is

10   initially on copyright plaintiff to prove that defendants' profits are _attributable to_ the

11   "infringement" (_i.e.,_ the distribution of a garment with an unauthorized pattern).

12

13       **B.    Star Fabrics Does Not Claim and Does Not Present Any Evidence That**

14             **Kandy Kiss or Target Profited From the _Copyright_ Infringement.**

15       This is an unusual copyright case.  Most cases involve copyrighted works that are

16   themselves marketable products.  Here, Plaintiff did not create the copyrighted textile

17   pattern, did not sell it, offer it for sale, value it, or protect it in any way.  Furthermore,

18   Plaintiff does not claim that it could have sold, or that Kandy Kiss or Target would have

19   purchased, a license to the right to distribute copies.   In dealings with garment

20   companies such as Kandy Kiss, Plaintiff's purported business is to sell yards of fabric –

21   not acquire any further distribution rights.  If Kandy Kiss had purchased the disputed

22   fabric from Star Fabrics (as it did for the other garments), Star Fabrics' distribution

23   rights in those copies would have been fully extinguished in accordance with the first

24   sale doctrine.  17 U.S.C. § 109.  Thus, the only market for distribution rights is at the

25   _fabric_ manufacturing level.   Even if Kandy Kiss and Target infringed Plaintiff's

26   distribution right and could be enjoined from such infringement, there is no reason to

27   believe such infringement negatively affected any attempts by Plaintiff to license or sell

28   its distribution rights at the garment manufacturing or retail level.  In other words, there

CALL & JENSEN
A PROFESSIONAL CORPORATION

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY ADJUDICATION

is no evidence that the distribution rights had any independent value at the garment manufacturing and retail level.  Rather, any alleged *ill-gotten* gains realized from the unauthorized copying of Star Fabrics' purported copyright would solely be due to alleged infringement attributable to Morex.  And if Star Fabrics wants to recover against Kandy Kiss and Target for *that* infringement, it needs to prove the elements of contributory or vicarious infringement, which it cannot prove in this case.

### C.   Plaintiff Has Absolutely No Evidence of Contributory or Vicarious Copyright Infringement by Kandy Kiss or Target.

Derivative liability is found in some cases where the company participates in or in some way facilitates the direct infringement, such that the company should also be held liable for the acts of the direct infringer.  Courts have characterized derivative liability as either contributory or vicarious liability.  In this case, the only possible way that Star Fabrics could potentially disgorge profits from Kandy Kiss or Target for "infringement" is to prove the elements of contributory or vicarious infringement, which Star Fabrics cannot do.  To prove contributory copyright infringement, Star Fabrics would need to present some evidence that Kandy Kiss or Target knew or had reason to know of the infringing activity by Morex, *and that Kandy Kiss or Target induced or materially contributed to it*.  For example, in *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005), the Supreme Court held that one who distributes a device with the object of promoting its use to infringe a copyright may be liable for the resulting acts of infringement by third parties, even if the device is capable of substantial non-infringing use.  The court characterized this as the inducement rule.  Stated differently, contributory infringement is based on principles of tort law in that "one who directly contributes to another's infringement should be held accountable." *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996).  The record is simply absent of any such evidence in this case.  To the contrary, the evidence demonstrates that the chain of distribution flowed from Morex to Kandy Kiss to Target.

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY ADJUDICATION

**CALL & JENSEN**
A PROFESSIONAL CORPORATION

Morex received the fabric design from its supplier overseas, sold fabric to Kandy Kiss, who in turn sold garments to Target. (UF Nos. 14-19 & 22-23.)  Simply put, this is not a contributory infringement case.

Similarly, this is not a vicarious infringement case.  To prevail against Kandy Kiss and Target for vicarious copyright infringement, Plaintiff must prove that Kandy Kiss and Target *profited directly from the infringing activity*, and that Kandy Kiss and Target had the *right and ability to supervise or control the infringing activity of Morex*, and that they failed to exercise that right and ability.  *Ellison v. Robertson*, 357 F.3d 1072, 1077-1079 (9th Cir. 2004).  Cases of vicarious infringement (and contributory infringement) may arise in situations involving a swap meet operator or an internet service provider, where the company has some control over the direct infringement and receives a benefit from the infringement.  *See, e.g., id.*; *Fonovisa, Inc.* 76 F.3d at 260-264 (reasoning that vicarious infringement is based on the principles of agency and *respondeat superior*).  Again, Plaintiff has absolutely no evidence that either Kandy Kiss or Target *profited from* Morex's production of fabric bearing an unauthorized design.  Certainly, there is no evidence to even remotely suggest that they had any right or ability to supervise or control any such alleged infringing activity.  Therefore, Star Fabrics is left to pursue a claim for "direct" infringement against Kandy Kiss and Target.

**D.    Plaintiff Cannot Establish a Causal Link Between the Alleged Infringement by Kandy Kiss and Target and Any Alleged Profits Unjustly Earned *Due to* the Alleged Infringement.**

Even if Plaintiff's evidence was sufficient to make a *prima facie* case of direct (or derivative) copyright infringement for violation of its distribution rights, Plaintiff is barred from recovering the profits of Kandy Kiss and Target because Plaintiff has no evidence to establish a causal relationship between such profits and the alleged infringement.  Even assuming that Plaintiff can prove infringement for purposes of this

**CALL & JENSEN**
A PROFESSIONAL CORPORATION

motion, which Defendants deny, the only party whose profits could possibly be causally related to direct infringement of copying is Morex itself.

In determining whether there is a causal relationship between infringement of an exclusive right and a defendant's gross revenues, courts apply principles of tort law. *Polar Bear Productions, Inc.* 384 F.3d at 708; *Mackie*, 296 F.3d at 915–16.  Applying principles of tort law, Plaintiff must establish that Kandy Kiss and Target's alleged infringement actually and proximately resulted in profits that they would not have earned absent the infringement.  Thus, Star Fabrics would need to prove that Kandy Kiss and Target earned greater profits than they would have had they distributed a garment bearing a fabric pattern that originated from or was authorized by Star Fabrics.  Obviously, Kandy Kiss and Target would not have earned any profits if they had not sold the garments at issue.  However, this does not by itself establish a causal link between the alleged infringement and the profits they earned.  If Morex is found to have directly infringed Star Fabrics' right to create and distribute copies, the infringement would have a causal relationship with the profits earned.  However, since Kandy Kiss and Target are charged only with *distribution* of unauthorized copies, Star Fabrics must prove that these defendants earned profits *because the copies were unauthorized*.  *See Gucci America, Inc. v. Daffy's Inc.*, 354 F.3d 228, 243 (3rd Cir. 2003) (precluding an award of profit disgorgement in a trademark case where the record did not demonstrate that the infringer was enriched *because of* the mark).  If Kandy Kiss and Target made no more profit than they would have had they distributed authorized copies then there is no logical or causal relationship between the infringement and the profits.

This approach is particularly necessary because it is the only way to avoid granting Plaintiff a windfall.  As explained above, the right allegedly infringed by Kandy Kiss and Target – the right to distribute copies – has no value at all, and certainly not at the level of garment manufacturing and retail.  The only possible rights that have any monetary value are the ones allegedly infringed by Morex (*i.e.,* the rights to reproduce and distribute copies at the fabric manufacturing level).  Star Fabrics does not

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY ADJUDICATION

CALL & JENSEN
A PROFESSIONAL CORPORATION

make any claim that it earns revenue from the distribution of finished garments.  Thus, to allow Star Fabrics to recover Kandy Kiss and Target's profits simply because they mistakenly purchased an unauthorized copy instead of an authorized copy means that it is way more profitable for Star Fabrics to have its copyrights infringed than to properly utilize and license them.[6]  On the other hand, if Star Fabrics can prove that Kandy Kiss and Target earned *greater* profits by distributing unauthorized copies than they would have had they distributed authorized copies, then Star Fabrics may certainly recover the difference and disgorge those profits that are due to the unjust enrichment.  However, it is Star Fabrics' burden, and Star Fabrics has no evidence to satisfy its burden.

By requiring Plaintiff to establish this legally required causal link, as mandated by the Copyright Act and Ninth Circuit precedent, it avoids the unintended and undesirable result of granting Plaintiff a windfall.  The Copyright Act is not designed to create windfalls for copyright owners, but rather to prevent infringement and to prevent others from unjustly enriching themselves by benefitting from infringement.  That is why the Plaintiff bears the burden of proving that profits are attributable to infringement.

The only party whose profits can potentially be causally related to the alleged infringement in this case is Morex.  Because Plaintiff has not submitted any evidence to

---

[6] Indeed, profiting from lawsuits is Star Fabrics' new business model.  Since 2007, Star Fabrics has filed at least 54 copyright infringement suits in the Central District.  (*See* Declaration of Scott P. Shaw, Ex. C.)  This lawsuit, along with the countless other lawsuits filed by Star Fabrics, presents a glaring example of the systematic abuse of U.S. copyright law.  Plaintiff is a professional litigant that makes profits by filing lawsuits.  Like other copyright trolls, Plaintiff purchases fabric patterns, registers the patterns for copyright protection, widely disperses small quantities of the fabric to Korean and Chinese fabric mills with knowledge of their infringing activities, pays employees to hunt down garments in the United States bearing similar patterns, and then files lawsuits.  By engaging in this sharp practice, Plaintiff abuses U.S. copyright law and attempts to extract unreasonable settlements based upon a tortured interpretation of the law.

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY ADJUDICATION

CALL & JENSEN
A PROFESSIONAL CORPORATION

1   establish a causal relationship between Kandy Kiss and Target's profits and the alleged
2   infringing activity, any evidence of their gross revenues will be irrelevant.

3

4   **V.     CONCLUSION.**

5        In sum, Defendants respectfully request that the Court grant this Motion for
6   Summary Adjudication and preclude Star Fabrics from seeking to disgorge profits of
7   Kandy Kiss and Target at trial.

8

9   Dated:  August 12, 2011              CALL & JENSEN
10                                       A Professional Corporation
                                         Scott P. Shaw
                                         Aaron L. Renfro
11

12
                                         By:   /s/Scott P. Shaw
13                                             Scott P. Shaw

14                                       Attorneys for Defendant Morex Enterprises, Inc.

15

16  Dated:  August 12, 2011              EZRA BRUTZKUS GUBNER LLP
                                         Mark D. Brutzkus
17                                       Todd M. Lander

18

19                                       By:    /s/ Mark D. Brutzkus
                                               Mark D. Brutzkus
20
                                         Attorneys for Defendants Target Corporation
21                                       and Kandy Kiss of California, Inc.

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

**CALL & JENSEN**
A PROFESSIONAL CORPORATION

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY ADJUDICATION

1

## SIGNATURE CERTIFICATION

I hereby certify that the content of this document is acceptable to Mark D. Brutzkus, counsel for Defendants Target Corporation and Kandy Kiss of California, Inc., and that I have obtained Mr. Brutzkus's authorization to affix his electronic signature to this document.

Dated:  August 12, 2011                CALL & JENSEN
                                       A Professional Corporation
                                       Scott P. Shaw
                                       Aaron L. Renfro


                                       By:___*/s/ Aaron L. Renfro*_____
                                          Aaron L. Renfro

                                       Attorneys for Defendant Morex Enterprises, Inc.

**CALL & JENSEN**
A PROFESSIONAL CORPORATION

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY ADJUDICATION